NICHOLLS, J.
Mrs. Mary L. Lognion, joined by her husband, has brought this suit against Isaac Fontenot and L. G. Doherty, praying to be decreed the owner of a small tract of land containing 40 arpents, more or less, described in her petition, and to be replaced in possession of the same. She prayed that a sale of said property, executed by her to L. G. Doherty, on the 12th of March, .WOO, and a sale of the same property, made by Doherty to Isaac Fontenot, be decreed null, void, and of no effect, and that the record of said acts on the conveyance books of the parish of Calcasieu, be canceled and erased. She prayed that Fontenot be condemned to pay her the sum of $120 per year rental from the 14th of May, 1900, when he took possession of the land, and $250, the value of a barn on the place which he alleges she removed from the place, less the taxes paid by him on the property. In her petition she averred that Isaac Fontenot claimed to have acquired the ownership of said property by virtue of an act of sale executed to him by L. G. Doherty on the 14th of May, 1901, recorded in Calcasieu parish.
That on the 12th of March, 1900, by a pretended act of sale, executed by her to said Doherty, by act before Anderson, notary public, it was made to appear that she parted with her title to said property for, and in consideration of, the sum of $200 cash; which act is recorded in book 27, at page 611, of the conveyance records of the parish of Calcasieu, La., said act being attached to and made a part of her petition.
That, as a matter of truth and fact, she never received the consideration stated in said act, but that the real and true consideration for the execution of said deed was for the purpose of making her property liable for her husband’s debts, and was made to secure two notes of $100 each, which her said husband had given to the said L. G. Doherty, in payment of two mules which he had purchased from the said L. G. Doherty, said notes having been executed by her said husband on the-day of October, 1S99, and due on, or before, December, 1899, but *904 which her said husband had not paid at their maturity.
She averred that the pretended sale was made in order to evade the provisions of the law prohibiting the wife from becoming surety for her husband and making her property liable for the debts of her husband; and that she signed the said pretended act of sale against her will, and under marital influence, known to and concurred in by the said L. G. Doherty.
She further averred that the said Isaac Eontenot was fully aware of the cause, and the manner under which she executed the said pretended sale, and that he purchased the same from the said L. G. Doherty, knowing full well that Doherty’s title was vicious and defective, and that she was the true owner of the said property, and he is, therefore, .a possessor in bad faith, and, as such, responsible to petitioner for the rent of said property from the 14th day of May, 1901, to the time she will be replaced in possession of her said property, said rent being at the rate of $120 per year or $3 per acre, the usual rent for rice lands, such as hers, and that the said Isaac Eontenot should be decreed to pay her the further sum of $250, the value of a bam which she had on the said property at the time he took possession of same, and which he converted to his own use and benefit, and removed from her said property. Petitioner averred that from the above amounts there should be deducted the taxes paid by the said Isaac Fontenot on her said property, to be determined from his tax receipts.
Petitioner further averred that the act of sale which she executed to L. G. Doherty on the 12th day of March, 1900, and the act of sale executed by L. G. Doherty to Isaac Eontenot on the 14th day of May, 1901, are absolute nullities, as acts having been done in contravention of prohibitory law, and should be declared null and void and of no effect, and she should be decreed the owner of the said property which she averred was now worth over the sum of, $2,000.
Citation in this case was served on Eontenot on the 5th of August, 1907.
On the 21st of October, she filed a supplemental petition in which she averred that one Isaac Foreman appeared to have some claim to the property; she prayed that he be made a party to the suit and cited.
Doherty answered. After pleading the general issue he denied that plaintiff was the owner of the property. He averred that he purchased the property in question as set forth in plaintiff’s petition, on or about the 12th day of March, 1900, for valuable consideration, and that, thereafter, by request of the plaintiff, he deeded same to Isaac Fontenot on the 14th day of May, 1901, and that the price thereof was paid by the said Eontenot in appearer’s presence to the plaintiff in cash.
He further suggested to the court that the property in controversy stood of record at that time in the name of Isaac Foreman, a resident of the parish of Calcasieu, who should be made a party to this suit in order that the interests of all parties be judicially defended.
In view of the premises, he prayed that this suit be dismissed at plaintiff’s costs, and for all such other orders and decrees in the premises, and for full and general relief.
Eontenot answered. After pleading a general denial he specially denied that plaintiff was the owner of the property. He averred that he himself was the owner of the same through good and legal chain of title, and that he had been in possession ever since his purchase.
He alleged that he purchased the property from the plaintiff, who was duly aided and authorized by her husband, a short time prior to the 14th day of May, 1901; that said plaintiff approached defendant and offered said property for sale, fixing the price therefor at $400; that defendant accepted said offer and *906 agreed to purchase said property; that said plaintiff immediately informed defendant that she would be compelled to go to the town of Jennings for the purpose of passing said deed, for the reason that “one L. G. Doherty had something to do with said property”; that on the 14th day of May, 1901, the said plaintiff, accompanied by her said husband, came to the town of Jennings for the purpose of passing the deed to the said property to defendant, and upon going before A. A. Hebert, notary public, the said L. G. Doherty, produced a warranty deed to said property bearing date of March 12, 1900; whereupon the said A. A. Hebert, suggested and advised that it would save expenses to have the deed passed from Donerty to defendant, which was done, and the purchase price of $400 was then and there paid to the plaintiff in the presence of her husband and other witnesses, in cash by your defendant.
Defendant specially denied any knowledge of any existing indebtedness between Doherty and plaintiff’s husband, especially denying that he knew that Doherty had any deed to said property prior to the passing of the sale, before mentioned, to defendant, which said sale was, in truth and in fact, a sale from plaintiff to defendant, and that said plaintiff, who was duly authorized to sell to Doherty by her husband, ratified said sale from Doherty to defendant, and so did her husband, who was there present aiding and assisting her, and that now the said plaintiff and her husband are estopped from setting up any claim to the said property, or from alleging any nullities whatever against the same.
Defendant further urged that he bought said property upon the offer of the plaintiff herself, assisted by her husband, and that he paid therefor the above-named price, which was a good and valid consideration for said transfer, and that the plaintiff herein received said money in her own hands.
He further urged that he had been in possession of the said property undisturbed since his purchase, paying taxes thereon without any claim thereto from plaintiff herein. He further alleged that he purchased said property in good faith, without any knowledge of any equities between Doherty and plaintiff, and even had such equities existed without the knowledge of defendant, that the plaintiff was estopped from setting up the same, for the reason that she received the purchase price of said property as stipulated in the sale from Doherty to your defendant made as aforesaid.
In view of the premises he prayed that the demands of the plaintiff herein be refused, rejected, and denied; that he be declared to be the true and lawful owner, and possessor of the northwest quarter of the northwest quarter of section 18, township 10 south, of range 4 west, Louisiana Meridian, as such quieted in possession thereof.
He further prayed for costs and for such further orders and decrees necessary in the premises, and for full, general, and equitable relief.
Isaac Foreman answered pleading the general issue.
The court rendered judgment in favor of defendant Fontenot against the plaintiff decreeing him to be the owner of the property claimed, and quieting him in the possession of the same. She has appealed.
The property which the plaintiff seeks to recover from the defendant, Fontenot, unquestionably belonged at one time to her as her paraphernal property. On the 12th of March, 1900, she (aided and assisted by her husband) sold and conveyed it with full warranty to L. G. Doherty for the price and sum -of $200, which in the act of sale was declared to have been received by her from the vendee. The act was recorded in'the conveyance book of the parish of Calcasieu on the 30th of March, 1900.
On the 14th of May, 1901, L. G. Doherty sold and transferred the same property with *908 full warranty and subrogation against all former owners to Isaac Fontenot for the price and sum of $400, which the act declared was received by the vendor from the purchaser Fontenot. The act was recorded in the book of conveyances of Calcasieu parish on the 30th of June, 1901. The present suit was filed on the 1st of August, 1907.
Fontenot went immediately in the possession of the property. The evidence shows that, after the transfer of the property by Mrs. Lognion to Doherty, and before the sale from Doherty to Fontenot, Mrs. Lognion agreed to sell the same property to Fontenot, and he agreed to buy it from her for the price of $400, he being in ignorance of the transfer which had been made to Doherty. Mrs. Lognion and her husband and Fontenot ■■subsequently repaired to the office of Hebert, notary, at Jennings, to pass the act of sale. When there, the transfer to Doherty was made known to Fontenot. What the circumstances were, under which Doherty held title, Fontenot did not know.
It was at first proposed to retransfer the property from Doherty to Mrs. Lognion, and then make a deed of sale from her to Fontenot, as had been agreed upon, but stating that this would entail costs the notary suggested that this was unnecessary as Doherty could, with the consent of Mrs. Lognion and her husband, then present, make a deed direct from herself to Fontenot, and this was accordingly done. Doherty signing the act as vendor. Fontenot counted out the money and paid it to Mrs. Lognion herself, her husband being present at the time. We think the state of facts appears beyond question from the evidence.
Mrs. Lognion reached the conclusion thereafter that, from the shape which matters had taken, she could successfully assert the continued ownership of the property and retake it from Fontenot, on the ground that the acts of conveyance took the form they did, in order to evade the law which protected her property from being liable for the debts of her 'husband; that no money passed in fact between herself and Doherty; that the purported act of sale to him was really a mortgage given to him to secure to him the payment of a debt of $200 which was due him by her husband, as the price of a pair of mules, and that she had signed this act of sale unwillingly, induced to do so under the marital influence of her husband. On the trial of the case, her counsel very strenuously opposed evidence going to show the actual situation of affairs, for the reason that Fontenot had alleged in his answer that he had purchased the property from Mrs. Lognion and that he was bound to stand upon the title so derived, and evidence to contradict or vary it was inadmissible. The court, however, allowed the evidence to be introduced. The plaintiff had herself, in her own petition, admitted that she had transferred the full legal title to Doherty, and that Doherty had later transferred the same to Fontenot, though she alleged that said transfers were null and void, Fontenot, she averred, being informed when he bought the property that it still belonged to her and having knowledge of the relations between herself and Doherty and the property when he took the title from the latter. The allegations made by Fontenot in respect in the character and origin of his title were conclusions of law drawn by him from the circumstances of the case, and it cannot be said that, from a legal standpoint, he was not authorized logically to draw that conclusion. We have on a number of occasions declared that the placing by a person of the legal title of his property in another person while the ownership remained in himself was often legally resorted to, and that when this was done the real owner was bound and committed to the acts of ownership committed by the holder of the legal title; that, while matters stood in that shape, the latter could be held to occupy towards third parties the position of an agent *910 with full and complete powers to dispose of the ownership. That subject was very fully considered in Nuss v. Nuss, 112 La. 277-279, 36 South. 345, and the legal results flowing from the conduct of the wife analogous to that adopted by the wife in the present case were discussed and shown in Colgin v. Courrege, 106 La. 688, 31 South. 144, and in the authorities therein cited.
The husband and wife were both present when Doherty conveyed the property to Fontenot. If there was any legal reason in the way of his doing so, it was their duty at that time to make that fact known to Fontenot. Instead of that, the wife, in the presence of her husband, received at that time the price resulting from that transfer, and it is now too late for the wife, joined and assisted as she is in this suit by her husband, to pretend that the sale to Fontenot was not valid and binding. They are both estopped from denying it.
We are satisfied that Fontenot acted in good faith and ignorance of the actual state of affairs. The plaintiff, after fencing a long time to avoid recognizing the actual facts of the case, finally admitted that she “had sold the property to Mr. Fontenot, paying the debt that was owing.”
The j udgment appealed from is correct, and it is hereby affirmed, with costs.